# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2728 | **DATE** | 2/27/2003 |
| **CASE TITLE** | American Patriot Insurance Agency, Inc., et al. vs. Mutual Risk Management, Ltd., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Mutual defendants' motion to dismiss for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) [23-1] is granted. Defendant, Cunningham-Lindsey, Inc. is also dismissed for the reasons stated in the opinion. Judgment is entered in favor of the defendants and against the plaintiff. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB 28 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 32 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | date mailed notice | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN PATRIOT INSURANCE AGENCY, INC., an Illinois corporation, DIANE M. HENDRICKS and KENNETH A. HENDRICKS, | |
| | No. 02 C 2728 |
| Plaintiffs, | Judge Ruben Castillo |
| v. | |
| MUTUAL RISK MANAGEMENT, LTD., a Bermuda corporation, MUTUAL INDEMNITY (BERMUDA), LTD., a Bermuda corporation, COMMONWEALTH RISK SERVICES, L.P., CUNNINGHAM-LINDSEY, INC., a Texas corporation, GLENN PARTRIDGE, an individual, DAVID ALEXANDER, an individual, and RICHARD TURNER, an individual, | FEB 2 8 2003 |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a nine-count complaint against Defendants for fraud, misrepresentation, conspiracy, breach of contract, equitable relief, RICO violations and negligence arising out of a failed commercial insurance program. Mutual Risk Management, Ltd., Mutual Indemnity (Bermuda), Ltd., Commonwealth Risk Services, L.P., David Alexander, Glenn Partridge and Richard Turner (the "Mutual Defendants") move to dismiss the claims against them for improper venue on the ground that a forum selection clause in a contract with Plaintiffs requires any litigation to be brought in Bermuda. Because we agree that the forum selection clause controls in this case, we grant the Mutual Defendants' motion to dismiss. (R. 23-1.)

## RELEVANT FACTS

In 1997 American Patriot Insurance Agency, Inc. ("APIA") entered into an agreement with certain of the Mutual Defendants to establish a commercial insurance program for APIA's roofing contractor clients (the "Program"). To effectuate the Program, Plaintiffs and Mutual Holdings, the parent company of Mutual Indemnity (Bermuda) Ltd., entered into a Shareholder Agreement, which, among other things, required Mutual Indemnity to reinsure APIA's liability on its roofing policies. APIA, in turn, was required to indemnify Mutual Indemnity and to provide irrevocable Letters of Credit to Mutual Indemnity as collateral. The Shareholder Agreement was one of several agreements executed between the parties, but these agreements "constitute[d] a single insurance program . . . which is a uniquely negotiated single contract." (R. 24, Defs.' Mem., Ex. 1, Shareholder Agreement.) The Shareholder Agreement contains a forum selection clause which states in pertinent part that the contract "shall be exclusively governed by and construed in accordance with the laws of Bermuda and any dispute concerning this agreement shall be resolved exclusively by the courts of Bermuda." (*Id.*)

Pursuant to the Program, Legion, an insurance company not a party to the present action, underwrote the Program and issued various insurance policies to the roofing contractors. Legion contracted with Cunningham-Lindsey, or one of its related entities, to service claims arising under the policies. Legion and Mutual Indemnity retained portions of the premiums in loss funds. Under the Agreements, if the losses and expenses in any Program year exceeded the loss funds, APIA assumed responsibility for paying on Mutual Indemnity's behalf those excess amounts. APIA's irrevocable letters of credit served as collateral underlying these obligations. In 1999 the claims and losses under the Program were greater than expected, and Plaintiffs

became concerned with their maximum potential liability under the letters of credit. Plaintiffs investigated these losses and discovered what they believed to be a fraudulent, or at the minimum negligent, scheme involving Cunningham-Lindsey, Legion and certain of the Mutual Defendants.

Accordingly, in April 2001, Plaintiffs filed the instant complaint, alleging fraud, misrepresentation, conspiracy, breach of contract, RICO violations and negligence arising out of the Program. The parties engaged in settlement discussions throughout the remainder of 2002. In December 2002 some of the Mutual Defendants, who were defending several lawsuits nationwide, prepared and filed a Scheme of Bankruptcy in Bermuda, the terms of which require a stay of pending litigation and fast-track, mandatory arbitration of those claims by a Mutual-selected arbitrator in Bermuda. On January 21, 2003, certain Mutual Defendants filed an ancillary proceeding under § 304 of the Bankruptcy Code in the Southern District of New York seeking to enforce in the United States the terms of the Bermuda bankruptcy. Finally, the Mutual Defendants filed the present motion to dismiss on January 24, 2003.

## LEGAL STANDARDS

A motion to dismiss for improper venue based on a forum selection clause is properly brought under Rule 12(b)(3). *Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal*, 859 F.2d 1302, 1306 (7th Cir. 1988); *Chapman v. Norwegian Cruise Line Ltd.*, No. 01 C 50004, 2001 WL 910102, *1 (N.D. Ill. July 6, 2001). The plaintiff bears the burden of establishing that the venue he has chosen is proper and that the forum-selection clause is unenforceable. *Chapman*, 2001 WL 910102, at *1. We must resolve any factual disputes in favor of the plaintiff and draw any reasonable inferences from those facts in the plaintiff's favor. *Moore v. AT & T Latin Am. Corp.*, No. 01 C 3013, 2001 WL 1002469, at *2 (N.D. Ill. Aug. 29, 2001).

## ANALYSIS

Plaintiffs first argue that the Mutual Defendants waived any venue challenge by failing to timely raise their objections. Objections to venue must be raised at the earliest possible opportunity or they are deemed waived. Fed. R. Civ. P. 12(h)(1); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995). Generally this requirement entails objecting to venue no later than the expiration of the period allotted for answering or moving to dismiss the complaint. Fed. R. Civ. P. 12(h)(1); *see also Commercial Cas. Co. v. Consol. Stone Co*, 278 U.S. 177, 179-80 (1929); *Ward v. Delaney*, No. 01 C 3074, 2002 WL 31133099, *1 (N.D. Ill. Sept. 20, 2002). A defendant also may waive his venue objections by expressly consenting to be sued in a certain district or by some other conduct that implies consent. 5A Wright, A. Miller, C. & Cooper, E., *Federal Practice and Procedure* § 1352; *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993); *Trs. of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732 (7th Cir. 1991) (the privileged defenses referred to in Rule 12(h)(1) "may be waived by formal submission in a cause, or by submission through conduct.") (internal citation and quotation omitted). Indeed, "[a] party need not actually file an answer or motion before waiver is found." *Continental*, 10 F.3d at 1297. Thus, a party that actively participates in litigation before filing an answer or responsive motion nevertheless may be held to have waived its venue objections, especially if significant periods of time have elapsed since the filing of the complaint. *See, e.g., In re Fin. Partners Class Action Litig.*, No. 82 C 6611, 1985 WL 2373, *2 (N.D. Ill. Aug. 23, 1985) (holding that defendant who had "technically preserved" a 12(b) defense by filing no responsive pleading nevertheless had waived the defense by engaging in discovery for over two years). Routine motions for extensions of time to answer and participation in settlement negotiations,

4

however, do not constitute active participation in litigation for purposes of venue objections. *See 2215 Fifth St. Assocs. v. U Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 56 (D.D.C. 2001) (holding that defendant did not waive objection to improper venue based on the forum selection clause by cooperating in settlement negotiations for six months because "the period was not so great and the prejudice incurred by plaintiffs was not so detrimental"); *D'Amico v. Treat*, 379 F. Supp. 1004, 1007-08 (N.D. Ill. 1974) (venue objection was not waived by filing an appearance and motion for enlargement of time to answer or otherwise plead).

This case was filed over ten months ago. In the intervening period, both parties represented to this Court that extensive settlement negotiations were ongoing and that settlement was contingent, in part, on an exhaustive audit of the claims under the Program. The parties filed numerous agreed motions to extend the time for Defendants' answers while the audit progressed. The Mutual Defendants willingly participated in the settlement discussions, informal discovery, and in filing joint status reports with this Court.[1] It is now evident that the Mutual Defendants' motivations for participating in these exercises were fueled, at least in part, by a tactical maneuver to postpone litigation in the United States while they prepared an extensive Scheme of

---

[1] The parties' initial joint status report, which was filed in August 2002, did not specifically identify venue as a defense. Instead, the defendants generally reserved "their respective rights to submit any appropriate motions . . . and to assert any and all appropriate defenses and counterclaims." (R. 13, Initial Joint Status Report at 3.) Notably, the defendants raised as a "major legal issue" whether Bermuda law should be applied in this action, but did not assert at that time that the action must be dismissed for improper venue in light of the forum selection clause. (*Id.* at 5.) In the parties' January 2003 joint status report, however, Defendants finally flagged the issue of whether "the forum selection clause in the Shareholder Agreement mandates dismissal of the claims against some or all of the Mutual Defendants." (R. 21, Joint Status Report at 5.) Although the initial joint status report could be deemed the defendants' "earliest opportunity" to voice venue objections, we have uncovered no cases holding that representations or omissions in joint status reports constitute waiver of privileged defenses such as venue, and thus decline to so hold today.

Bankruptcy in Bermuda that will, if given effect here, halt all pending causes of action and funnel them into mandatory arbitration in Bermuda. That being said, however, Plaintiffs clearly were willing participants in this tactic to the extent it served their desire for quick, informal discovery. Despite this long delay and their lack of candor with this Court, the Mutual Defendants did not participate in this litigation outside the settlement context, and thus we conclude under relevant case authority that they failed to timely raise their venue objections. Accordingly we hold that the Mutual Defendants did not waive their venue objections by failing to raise them in the ten months prior to their pending motion to dismiss.

Having determined that the Mutual Defendants have not waived any objections to venue, we turn to the validity of the forum selection clause. It is well-settled that contractual forum selection clauses are *prima facie* valid. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Forum selection clauses in international contracts are accorded special deference due to the "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes." *Mitsubishi Motors Corp. v. Sober Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985). Thus, such clauses are enforced unless the provision is unreasonable. *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). A forum selection clause is unreasonable if: (1) it is procured by fraud or overreaching; (2) it would result in a forum so gravely difficult or inconvenient that the plaintiff effectively will be denied his day in court; or (3) its enforcement would contravene a strong public policy of the forum in which the suit was brought, as defined by statute or judicial decision. *See AAR Int'l, Inc. v. Nimelias Ents. S.A.*, 250 F.3d 510, 525 (7th Cir), *cert. denied*, 534 U.S. 955 (2001).

Here, the Shareholder Agreement's forum selection clause clearly provides that the contract "shall be exclusively governed by and construed in accordance with the laws of Bermuda and any dispute concerning this agreement shall be resolved exclusively by the courts of Bermuda." Therefore, we will enforce the clause unless Plaintiffs prove that it is obviously unreasonable. *Paper Express*, 972 F.2d at 757.

Plaintiffs do not claim that the forum selection clause was the result of fraud, overreaching or unequal bargaining power. Nor do they claim that an Illinois or federal public policy as declared by a statute or judicial decision would be contravened by enforcing the forum selection clause. Plaintiffs' primary argument is that they will be denied due process and thus their day in court if they are forced to litigate this matter in Bermuda. In essence, Plaintiffs contend that they will not be afforded a right to be heard because their causes of action will be subsumed within Mutual's Bankruptcy Scheme in Bermuda, which if enforced according to its terms, requires mandatory, fast-track arbitration of Plaintiffs' claims by an arbitrator chosen by the Mutual Defendants. Additionally, Plaintiffs assert that the present Bankruptcy Scheme assigns almost no value to Plaintiffs' claims and requires a release of future claims and the right to appeal. As a result, Plaintiffs argue, the Scheme is contrary to American bankruptcy law as well as our principles of due process.

Although these arguments have superficial appeal, Plaintiffs fail to satisfy "the heavy burden of proof required to set aside the [forum selection] clause on grounds of inconvenience." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (internal quotation omitted); *Quist v. Empire Funding Corp.*, No. 98 C 8402, 1999 WL 982953, *3 (N.D. Ill. Oct. 22, 1999). As an initial matter, it is not certain that the Scheme will proceed in its present form. According

7

to exhibits attached to Plaintiffs' response, the Scheme has yet to be approved by the Bermuda courts. (R. 28, Pls.' Resp., Ex. U, Section 304 Pet. at 14.) In addition, a condition precedent to the Scheme becoming effective in Bermuda is the issuance of an order by the New York Bankruptcy Court that gives full force and effect to the Scheme in the United States. (*Id.*) Many potential creditors, including Plaintiffs and other nationwide litigants, have voiced vehement opposition to approval of the Scheme in the New York bankruptcy proceeding. (*Id.*, Ex. V, Pls.' Opp. to Mutual's § 304 Pet.) Given these objections and the Scheme's apparent divergence from the protections and practices inherent under American bankruptcy law, it is entirely possible that Mutual's § 304 Petition will be denied, or at least modified, by the New York bankruptcy court.[2] In addition, there is no evidence that Plaintiffs presently are unable to file an action in the Bermuda courts protesting the terms of the Scheme. We are unconvinced that Plaintiffs have no recourse against the Scheme in its present form such that they will be unable to litigate their

---

[2] Given Mutual's insolvency some form of bankruptcy appears inevitable. Thus, Plaintiffs' claims and recovery will be subject to the terms of that arrangement, whatever it may be, including potential stays on litigation and curtailed damages recovery. A forum selection clause is not unreasonable simply because the party opposing it will not have the "same judicial process in the imposed forum that it would have in its chosen forum." *Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgesellschaft, MBH*, 618 F. Supp. 344, 348 (N.D. Ill. 1985). We uphold forum selection clauses in international transactions subject to laws and remedies different or less favorable than those of the United States. *See Bonny v. Soc'y of Lloyd's*, 3 F3d 156, 162 (7th Cir. 1993). Similarly, we will not reach the attenuated conclusion that Plaintiffs have been denied their day in court simply because they may be subject to a set of terms in a foreign bankruptcy proceeding that are less favorable than those in a domestic bankruptcy, especially if those terms have passed muster via ancillary proceedings in our own bankruptcy courts. We trust that our bankruptcy courts will not sanction a Scheme that is so anathema to fundamental principles of due process and fairness, as Plaintiffs contend, and thus we need not pass judgment on the fairness of the Bermuda Scheme in this action by invalidating the forum selection clause on those grounds.

8

claims in Bermuda and thus be deprived of their day in court if we enforce the forum selection clause.[3]

Finally, we turn to Plaintiffs' arguments that the motion to dismiss should be denied because: (1) some of their claims, including fraud, RICO, conspiracy and negligent misrepresentation, lie outside the scope of the Shareholder Agreement; (2) some of the parties, including the individual Mutual Defendants and Cunningham-Lindsey, are not parties to the Shareholder Agreement; and (3) some of Plaintiffs' claims arise out of contracts that do not contain a forum selection clause. These arguments are wholly without merit. The Shareholder Agreement, essentially incorporates by reference the underlying insurance policies and the Reinsurance Treaty as a "uniquely negotiated single contract." Thus the fact that other relevant documents do not also contain a forum selection clause does not undermine the clause's validity in this action. Nor do Plaintiffs' claims asserting RICO violations and fraud defeat enforceability of the forum selection clause. The Agreement expressly states that the forum selection clause applies to "any dispute concerning" that Agreement. "[A]ll disputes the resolution of which arguably depend upon the construction of an agreement 'arise out of' that agreement" for purposes of a forum selection clause. *Omron Healthcare, Inc. v. Maclaren Exps., Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994). The alleged fraud, negligent misrepresentations or RICO violations occurred because the Agreement and the Program were in place. The Shareholder Agreement is the document that links the various contracts together as well as the defendants to the plaintiffs; thus it is the controlling document and its forum selection clause

---

[3] Plaintiffs also argue that they may be unable to obtain necessary documentary and testimonial evidence in Bermuda. But the mere loss of live testimony by non-party witnesses ordinarily does not constitute such serious inconvenience so as to warrant setting aside a freely negotiated forum selection clause. *Quist*, 1999 WL 982953, at *3.

9

binds the parties. *See Friedman v. World Transp., Inc.*, 636 F. Supp. 685, 691 (N.D. Ill. 1986). Similarly, we also reject Plaintiffs' argument that enforcement of the forum selection clause is precluded by the fact that certain Defendants are not parties to the Agreement. Plaintiffs cannot escape their contractual obligations simply by joining parties who did not sign the contract and then claiming that the forum selection clause does not apply. *See Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993); *Friedman*, 636 F. Supp. at 691. Parties that are "closely related" to the dispute also may be bound to a forum selection clause. *Hugel*, 999 F.2d at 209. Certain of the Mutual Defendants clearly are third-party beneficiaries of the Agreement, which is a sufficient, if not necessary, status to satisfy the "closely related" standard. *Id.* at 210. The remaining Defendants, including the individuals and Cunningham-Lindsey, and their claims are so integrally related to the Shareholder Agreement and the Program that they are bound to the forum selection clause. *Bonny*, 3 F.3d at 162. For these reasons, although Cunningham-Lindsey is not a Mutual Defendant and has not moved for dismissal, we are not precluded from dismissing it from the action as well.

## CONCLUSION

For the foregoing reasons we grant the Mutual Defendants' motion to dismiss for lack of venue. (R. 23-1.) We also dismiss the nonmoving Defendant, Cunningham Lindsey, for the reasons stated in this opinion. The Clerk of the Court is instructed to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Defendants.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: **February 27, 2003**

10